IN RE DISQUALIFICATION OF DEZSO.

BLAIR, F.K.A. WALLACE, *v*. WALLACE.

[Cite as *In re Disqualification of Dezso,* 134 Ohio St.3d 1223,

2011-Ohio-7081.]

*Judges—Affidavit of disqualification—Affidavit of disqualification denied.*

(No. 11-AP-125—Decided December 27, 2011.)

ON AFFIDAVIT OF DISQUALIFICATION in Summit County Court of Common Pleas,

Domestic Relations Division, Case No. 2004-02-0502.

_____

**O'CONNOR, C.J.**

{¶ 1} Defendant Scott B. Wallace has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Carol J. Dezso from case No. 2004-02-0502, now pending on postdecree motions in the Domestic Relations Division of the Court of Common Pleas of Summit County.

{¶ 2} Wallace alleges that Judge Dezso has made a public statement that appears to commit her to rule a certain way on matters pending before her. Wallace states that in 2008, Judge Dezso wrote a letter of public support for plaintiff's attorney, Michelle Smithern, who was facing felony charges at that time. According to Wallace, Judge Dezso's letter reasonably calls into question her impartiality and poses an impediment to her ability to resolve any remaining issues in a way that will appear to the public to be objective and fair. Wallace also asserts that "Judge Dezso's personal and professional support for Attorney Smithern" may be the reason why the judge has refused to schedule hearings and to rule on his motions.

{¶ 3} Judge Dezso has responded to the concerns raised in the affidavit of disqualification. She concedes that she wrote a letter concerning attorney

Smithern in 2008, but she explains that the letter was in response to a subpoena in Smithern's criminal case. According to Judge Dezso, she was subpoenaed to testify about her professional relationship with Smithern. Instead of appearing in person to testify, the judge was permitted to write a letter. The judge denies any bias, prejudgment, or appearance of impropriety arising from the letter and maintains that her comments in that letter in no way indicate that she favors any party or lawyer in the underlying case.

{¶ 4} Lisa Carey Dean, counsel for plaintiff Shannon Blair, has also filed a response in opposition to the disqualification request. Attorney Dean contends that Judge Dezso's statements have no bearing on any issue in the underlying case. She also asserts that the judge's comments in her letter do not demonstrate predisposition. Dean further notes that attorney Smithern no longer represents the plaintiff and has not for some time. Finally, Dean maintains that Wallace's objection to the letter is untimely and, moreover, that Wallace raised the issue of Judge Dezso's partiality only after receiving unfavorable rulings.

{¶ 5} For the following reasons, no basis has been established for ordering the disqualification of Judge Dezso.

## Waiver

{¶ 6} It is well settled that an affidavit of disqualification must be filed as soon as possible after the affiant becomes aware of circumstances that support disqualification and that failure to do so may result in waiver of the objection. *In re Disqualification of Pepple*, 47 Ohio St.3d 606, 607, 546 N.E.2d 1298 (1989). Wallace complains of a letter written by Judge Dezso on September 9, 2008. Wallace indicates that he became aware of Judge Dezso's letter shortly before November 9, 2010, although Wallace never states specifically when he first discovered the letter. In any event, Wallace avers that once he "became aware of Judge Dezso's support of Attorney Smithern, [he] filed a Motion for Recusal." Judge Dezso denied the motion to recuse on June 10, 2011. Wallace, however,

2

waited until November 9, 2011, before filing the instant affidavit of disqualification against Judge Dezso. This was five months after the judge denied Wallace's motion for recusal and one year after Wallace claims to have first discovered Judge Dezso's letter. Yet Wallace offers no explanation as to why he waited five months after Judge Dezso denied his motion to recuse to file his affidavit of disqualification. Wallace should have raised his objections long before November 2011, and his delay in filing the affidavit of disqualification constitutes an independent ground for denying his disqualification request. *See In re Disqualification of Glickman*, 100 Ohio St.3d 1217, 2002-Ohio-7471, 798 N.E.2d 5, ¶ 7-8.

### The Merits of the Affidavit of Disqualification

{¶ 7} Even if Wallace had not waived his objections, his allegations of bias and prejudice against Judge Dezso are without merit. Each of Wallace's claims will be addressed in turn.

{¶ 8} Wallace contends that Judge Dezso's disqualification is required by Jud.Cond.R. 2.11(A)(5). According to Wallace, the judge's letter was a public statement that "appears to commit her to reach a particular decision and to rule in a particular way" on matters pending before her.

{¶ 9} Contrary to Wallace's assertion, Jud.Cond.R. 2.11(A)(5) does not mandate Judge Dezso's disqualification in this instance. Jud.Cond.R. 2.11(A)(5) provides that a judge must be disqualified if "[t]he judge * * * has made a public statement, *other than in a court proceeding*, judicial decision, or opinion, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy." (Emphasis added.) Judge Dezso's letter—submitted in a criminal case in response to a subpoena—is a public statement. Her public statement, however, does not run afoul of Jud.Cond.R. 2.11(A)(5), because it was made in a court proceeding.

{¶ 10} In addition, the comments contained in the letter do not commit the judge to reach a particular result or to rule a particular way. Attorney Smithern appeared before Judge Dezso as counsel of record in a substantial number of cases over a ten-year period. Judge Dezso, as an officer of the court, merely expressed her professional opinion of Smithern as a practicing lawyer in her courtroom.

{¶ 11} Wallace argues that Judge Dezso's comments relate directly to matters raised in his pending motion for sanctions and objections to the magistrate's decision, namely attorney Smithern's ethics and discovery practices. He points to statements in Judge Dezso's letter that Smithern was "extremely ethical in her practice [and] did not stonewall discovery, or engage in other ethically questionable practices under the pretext of zealous representation." But nothing in the judge's letter commits her to any particular ruling or result in the underlying case. Judge Dezso's comments reflect nothing more than general observations from the bench about Smithern's competence as an attorney and her professional behavior. They do not demonstrate that Judge Dezso has prejudged any matter in the underlying case.

{¶ 12} Finally, Wallace complains that Judge Dezso has failed to schedule hearings and to rule on his motions. But a judge's alleged failure to set a matter for hearing or to promptly rule on a motion is not grounds for disqualification. *In re Disqualification of Eyster*, 105 Ohio St.3d 1246, 2004-Ohio-7350, 826 N.E.2d 304, ¶ 4 (a judge's action—or inaction—on a motion is within the judge's sound discretion and is not evidence of bias or prejudice); *see also In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4 (an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law"). Indeed, trial judges are entitled to exercise discretion in performing many judicial and administrative functions, and it is not the chief justice's role in

deciding an affidavit of disqualification to second-guess how a trial judge manages her docket.

**Conclusion**

{¶ 13} Judge Dezso has presided over this case for several years, and it has long been held that absent extraordinary circumstances, a judge will not be disqualified after having presided over lengthy proceedings in a pending case. *In re Disqualification of Light*, 36 Ohio St.3d 604, 522 N.E.2d 458 (1988). No extraordinary circumstances are present here, as Wallace points to no comment or action on the part of Judge Dezso that would demonstrate bias, prejudice, or a disqualifying interest. On this record, no "reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8 (setting forth the proper test for disqualifying a judge based on an appearance of impropriety).

{¶ 14} "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.

{¶ 15} For the reasons stated above, the affidavit of disqualification is denied. The case may proceed before Judge Dezso.

————————————————